We know this. That's the way it operates here. So you can proceed on that. I believe my time is up. All right. Thank you. Thank you, counsel. I'll take the matter under advisement. Call our second case, Juan v. Attorney General. Good morning, Your Honor. May it please the court. Richard Tarsier for Petitioner Ang Hwang. I would like to reserve three minutes out of my 15-minute time. I believe we are here today because the Board of Immigration Appeals is either incapable or unwilling to follow its own regulations. The more I read the Board's decision on my case, the more I'm confused. I don't know what they were thinking. They simply get a result without really giving it any analysis. Well, the immigration judge's opinion doesn't refer to a lot of the evidence of record. It refers to enough evidence of record for the judge to make a decision that they have met their set of facts to show an objective basis for their well-founded fear. All right. Let's back up a minute. What is the standard of review that the BIA should follow when presented with the issue as to objective reasonableness of a well-founded fear? Since it's primarily a finding of fact, I think it is a finding of fact, it has to be de novo. Under its regulations, all finding of facts must be reviewed under the clearly erroneous standard. That's in their regulation. They just don't follow it. We have held, as recently in Espinoza-Cortez, filed June of this year, that a well-found fear is a factual determination, yet the Attorney General has filed a 28-J citing HLH and ZYZ saying it's de novo. What do we make of all this? Well, that's wrong. I'm the attorney in HLH up on appeal in the Second Circuit, and that's still pending. But in HLH, HLH depended on Kaplan. Now that Kaplan really can't be counting on, you can't count on it in this circuit anyway, to say that we have de novo review. Well, Kaplan was the cat. Kaplan was a predictability of a likelihood of torture, which we said was a factual finding, and whether there's torture is a legal conclusion. But that's cat. This is different. This is a well-founded fear of persecution. I don't see any difference. The regulations do not talk about any difference. So you're saying well-founded fear here is factual, and persecution, what persecution means, is de novo, if you're saying there's a parallel with Kaplan. Well, there's a part of the analysis for asylum for well-founded fear that is factual, and there's a part just like in Kaplan, and for cat, there's a part that's legal. And that's what we said in Sharif, right? Exactly, correct. Sharif said, quote, the determination as to whether certain facts give rise to well-founded fear of persecution is governed by a de novo standard of review, but the clearly erroneous standard applies to the fact finding that undergirds that determination. So it's a mixed question, and ultimately there's a legal determination involved with well-founded fear, but there's all kinds of subsidiary issues there that are purely factual. Is that a fair statement? Absolutely. The majority of the decision is factual. It's facts intensive. Sure, but there is a component, that question of objective reasonableness, which is a legal standard and which involves the application of a legal standard, and that's what was going on in Sharif. Let me step back. That's the import of that statement in Sharif, that there's a de novo standard with clearly erroneous governing factual issues. Is that right? Somewhat, except that the board needs to leave the factual findings alone. Absolutely, because it's a clear, well, alone. It's going to review them for clearly erroneous problems, right? Correct, but they didn't do that in our case. They went ahead and looked at the facts under presumably de novo review because they changed the facts. They gave little weight to a piece of documentary evidence that the judge may have found to have full weight. Is it all about weight? You're saying well-founded fear. What is well-founded? You have three items here. You have six items here, but if the three items would give rise to a well-founded fear, even though there are six on the other side. I mean, the Supreme Court has said if there's persecution of one in ten people, a person can be justified in being a fearful person, even though they might not be that one in ten if returned to the country. I mean, is it about weight? It could be. It's part of the analysis, but it's also deference to the judge's finding of facts. I have yet to see a board decision overturning a judge's grant where the board doesn't leave the factual findings alone. They never look at it under clearly erroneous. They up front tell you we're looking at it under de novo. Well, it is curious here that the two things that were picked out by the BIA, the parent's letter and then an affidavit from someone else who had been sterilized, almost said well, those don't show a certainty. So therefore, there is no well-founded fear. And yet, if you look at the record, I mean, I came up with three pages of references in the record to the fact that this sterilization occurs. And there's no, the BIA doesn't say, you know, looking at all the evidence, we can't find a well-founded fear. And it would seem to me that's really what you have to do. Well, they pick and choose what they need to to reach the result that they want. Because you're right, if you do look at all the evidence, I think a reasonable fact finder has to conclude that you've met your burden. There's 2,000 pages of evidence in this record. They talk about, like you said, two pieces of evidence, one of them being one or two pages. And the other one, they say, the affidavit from the man who was similarly situated, that we don't know all the facts in that case. Well, he supported his affidavit with almost 100 and something pages of background to support his claim. Let me ask you something about Sheriff, because I find it a little bit unique. It said, we said, the BIA erred if it imposed a de novo standard of review on findings about conditions in Liberia. But not if it imposed a de novo standard on whether certain conditions legally constitute a rebutted presumption of a well-founded fear for future persecution. That was a slightly different issue. It was. It was the legal sufficiency to rebut a presumption. It's a little confusing, because here we are looking at facts. The board is looking at facts and disagreeing with them. And it's looking at them, it's pretty clear, that's de novo. It's not clearly erroneous. But you're saying the analysis here by the board had to have found the IJ's determination as to well-founded fear to be clearly erroneous. The underlying facts of that finding to be clearly erroneous. You can't look at this record and say, these people have not presented evidence that they are fearful. There's so much here, so much credible evidence, you have to turn around and say, the evidence is not credible. But are you saying it can weigh anew? Can the BIA weigh the evidence anew in terms of whether it amounts to a well-founded fear? I believe not. And the reason I say that is, I know what the regulations say, but if you go back and look into the federal register, and you look at what the board was thinking, not the board, what the government was thinking when they implemented the regulations, it says clearly, a finding is clearly erroneous. Although there is evidence to support it, the reviewing board member or panel is left with definite and firm conviction that a mistake has been committed. A fact-finding may not be overturned simply because the board would have weighed the evidence differently or decided the facts differently had it been the fact-finder. And that's talking about, the problem here is, of course, we may be dealing with terms that are getting used equivocally. The very issue on the standard review is, what's a question of law and what's a question of facts? So for them to say in the regulation, and we review facts for clearly erroneous problems, doesn't advance the ball much. But what I understood Sharif is saying, or Sheriff, however it's pronounced, and I'd like your take on it, is that there's two parts to a well-founded fear analysis. There's a subjective element and an objective element. The subjective element is purely a question of fact. I mean, there's no legal standard there at all. Whether somebody's got in their mind a fear or not, it's not something that anybody knows. It's just something that the person has or doesn't have, and you make a judgment about it factually, and that's that. But as to the objective component, whether a reasonable person in like circumstance would have a reasonable apprehension, that that is, like many other standards, a question involving the application of a legal standard. That is, objective reasonableness. What's an objectively reasonable response to those circumstances? And that that's what we were saying, Sharif, you can respond to with de novo. That is, you're not going to get in and reweigh the facts that are found in the sense of saying, hey, the evidence shows this person got beat up, cut, hurt, abused, et cetera, et cetera. But you may, if you're the BIA, get in and say, well, what do we think a reasonable person would respond to, how the reasonable person would respond to these things? And that's something that the BIA feels entitled to do just as much as an IJ. That's how I thought this was playing out. Am I on the right track or am I off track in understanding that as the analytical approach? Possibly, except the board's not doing that anyway. I'm not talking about in this specific case. I recognize that in your case, you're saying, look, they got down into the subjective stuff, and they were just saying, and they were saying that fact, this, that fact, that, and doing things they shouldn't have done with pure fact questions. I'm trying to just focus on the standard review for a minute and find out whether analytically I have understood correctly the way this well-founded fear analysis proceeds. I'm not sure. I've seen hundreds of board decisions just like this. So I know the board doesn't do that. So I can't answer your question as to what should be done, what is the correct way to do it, because I only see the incorrect way of doing it. It's difficult. I mean, we've just said whether for a silent purpose a petitioner has proven that he or she has a well-founded fear is a question of fact. It's been said time and time again, a well-founded fear is a question of fact. I'll put five more minutes on, please. And I'm having difficulty figuring out how the well-founded fear and the finding about that, the reasonableness of it, is all that different from the predictability piece in Kaplan. We're making a prediction. We say that's purely factual, the likelihood. And yet here, well-founded fear has that aspect to it as well, because you're going to find there isn't a well-founded fear if the one piece of evidence that they cite is really very flimsy, and there are nine pieces on the other side that says this is just never going to happen. I just, you know, I think it is difficult. I do understand the argument, and it is fact-intensive, but the board never defers to the facts. They always want to revisit the facts to reach that conclusion, because I would think it would look silly reaching the conclusion that you haven't met your burden if they defer to the judge. Well, let's assume for the sake of argument that there is de novo, but that de novo here doesn't mean kind of all bets are off. It means they can reweigh, they can look at it and disagree with the IJ as to what really counts and what's important. But here, I guess you would argue that they pick two pieces of evidence, and rather than say, does all the evidence support a well-founded fear, which need not be, is not a likelihood standard. The Supreme Court has held it has nothing to do with a probability standard. But their de novo, their review was not supported by substantial evidence, because all they did was chip away at two pieces of evidence as evidence, rather than saying, looking at all the evidence, does this person, is the fear well-founded? I still maintain the position they have no right to do that. The regulations are clear that it's a de novo review of the facts, and looking back... No, you mean clearly erroneous review. Clearly erroneous, the facts, and looking back at the Federal Register tells you... Although you couldn't answer Judge Jordan's question, which went right to this issue of, you know, how are they supposed to do it? We're really struggling with this. I'm not the board. I'm not going to tell them what their job is. I'm just pointing out the errors that they make. They're not supposed to do what they did. Right. How are they supposed to decide a case? Well, if the facts are what the judge said and not clearly erroneous, let's leave them alone. And now let's take a look and see if that is sufficient, the way the judge found, to meet your burden. So you're saying the IJ credited this evidence, these two pieces? Yeah, absolutely. And they're finding that these pieces of evidence are, they disagree. They could not find that they were clearly erroneous, but they disagreed. He credited the whole record, not just these two pieces, the 2,200 pages. He credited the whole thing. Did you, the government asserts that you waived any argument about economic persecution. Do you have a response to that? Well, we did not bring it up because the judge had granted the case. We didn't know what the board was going to do. We didn't preserve that part of appeal to the board because it wasn't an issue. The board could have found in our favor. Why are we appealing a grant of asylum? So as a practical matter, what does that, where does that leave us? Well, I don't, the board, again, is making findings of fact even as to that. They're concluding you haven't met your burden. But they're prohibited from making any findings of fact. They should send that part of it back to the judge if it's an issue. Back to the judge for the judge to decide it in the first instance. So are we, are you asking us to send it back to the BIA? I'd like it, I think it has to go back to the BIA, but I would like the decision to be very clear as to what the board's powers should be and how they should act because they continue to do this. You'll have a case next week with the same issue and then in a month from now and a year from now. There has to be a stop to it. How about later today? I'm good with that. Okay. Hang around. If there are no further questions. All right. You reserve time. May it please the court. My name is Siddha Manikam and I represent the Attorney General in Huang v. Holder. I'm here first to argue that this case pursuant to our July 9, 2010, 28-J letter should be held in abeyance pending the resolution of the government's motion for panel re-hearing in Kaplan. Kaplan's a different case. It's Kaplan's Convention Against Torture case. It really, I mean, it has some bearing because it shows we can decide certain aspects are clearly erroneous and certain aren't. But this is supported by a different line of cases really than Kaplan, is it not? It is. Kaplan's the most recent case that came up with respect to the standard of review, whether to apply a de novo or clearly erroneous standard with respect to the board's decision. We request that the board under the Chevron deference in Ventura be given the first opportunity on remand for further consideration under Kaplan. The board's decision was rendered prior to and without the benefit of these recent decisions. Well, the board has had the benefit of our, I guess I'm wondering what the board would say any differently than it said in the past. I'm feeling a little bit of Mr. Tarzi's pain here, I think. If ASB says that, hey, it's all de novo to us because an event in the future, a future probability can never be a fact, I mean, I'm not sure what sending it back to them does for us except get them to say one more time, well, we don't believe probabilities of future events are facts, something that Kaplan rejects, in fact, analytically shreds. So I'm not clear on what the gain is by waiting around, but we're here, so let's talk. We described why assessing the potential of a likely future event in Kaplan is a fact. So if we were to follow the analysis in Kaplan on that point, we'd have to reject ASB, wouldn't we? With respect to ASB and recent decisions that have come out, I'd point out that the courts have distinguished between the board interpreting its own regulation in an asylum context versus interpreting a statute in a CAT context. Specifically, in our B. Robbins U.S. Supreme Court case, the court held that deference to an agency's construction of its own regulations must be upheld where it is neither, quote, I'm not sure I'm understanding that as an answer to the question I'm trying to ask. The question I'm asking is, I think, a pretty straightforward one, which is, if we accept what Kaplan says about future events and the probabilities of future events constituting a question of fact, does that not mean that ASB is out the window? I think it would render many cases, ASB and many other cases, could be nullified or the standard clearly would have to be clarified. With respect to Kaplan itself, Kaplan held that the board has de novo review to decide, quote, whether the facts meet the particular legal standard or under review. That's the torture component, and here we would have persecution component that would be parallel to that. But in terms of well-founded fear, if you analogize that to the predictive element of Kaplan, there's evidence, is it likely, here there's evidence, is it well-founded? It seems to be along the same lines as Kaplan. That would be a factual finding. The supplemental information attached to the regulations, the Attorney General's explanation of its own, of the board's review regulations, specifically state, quote, the clearly erroneous standard does not apply to the application of whether the facts established by a particular alien amount to a well-founded fear of future persecution. We feel that the guidance provided, and the board, excuse me, the court in Kaplan specifically referenced the Attorney General's explanation of the board review regulations. And have we been just plain wrong in all our cases, Espinoza and Sandy and the Supreme Court and Cardozo-Fonseca, when we say well-founded fear is a finding of fact? I think the court is grappling with and the Attorney General shares the pain and sentiments of all the parties involved in applying a bifurcated analysis that needs to clarify between findings of fact that are subject to a clearly erroneous standard and findings of law that have to apply a de novo review. With respect to the future likelihood of torture, which was at issue in Kaplan, that it was clear and the Attorney General in its petition for a panel re-hearing specifically found that that bifurcated analysis is not something that we can test. And it's something that a remand to the board in this case is something the Attorney General agrees would be helpful because it will provide the board an opportunity to apply the proper analysis under Kaplan. If that's true, then, well, maybe I should ask the questions. You were here when I articulated or attempted to articulate, probably not all that successfully, what I drew from Sheriff as the analytical approach that is akin to Kaplan, that there are underlying facts and lots of them, and then there's a legal issue to be addressed as part of that, which is the objective reasonableness piece of it. Is that an accurate reading of our own case law? Is it, in fact, how the BIA proceeds? What's your take on it? As you mentioned, there is a subjective and objective element with respect to a persecution claim. The subjective element of whether the alien genuinely has a genuine fear of persecution, and second, an objective component of whether that fear is reasonable. One analytical approach that may be helpful to this court is something that is referenced in Kaplan, is the, quote, unquote, comparative advantage between the board and the IJ in evaluating issues of fact and issues of law. The board specifically predicated its decision in Kaplan in part on the fact that with respect to issues of fact, such as the expert credibility, an expert's credibility in Kaplan, that the immigration judge is in a better position to assess the future likelihood of torture and weigh those facts than a board is simply looking at a record, because the immigration judge can assess tone, body language,  whereas with respect to whether the facts rise to the, satisfies the legal standard, is a legal determination where the immigration judge has no comparative advantage over the board. Let me make this more poignant, Mr. Mankin. What I'm trying to find out is, and I think Judge Rendell may be alluded to this too, is the government's position that the objective reasonableness prong of well-founded fear is akin to a legal standard like saying torture in the CAT context, or not? Or has it got a position on that? That would help me. To answer your question, we feel there is, the courts have distinguished between the deference accorded to an agency's interpretation of its own regulation on an asylum context, and has given heightened deference in that context versus the interpretation of a statute. Let's go back to Kaplan and the concept of the predictability. You know, you could argue, well, we should defer to the IJ, because the predictability, he's seen the evidence, et cetera, et cetera, where the BIA is in a better position to say predictability, because they see this all the time and they can re-weigh it. I guess what I'd like to do is see whether the well-founded fear, that is, is this fear grounded in the record, and well-founded based upon evidence of the record, is that a different conclusion or exercise? Is that all that different from the likelihood, looking at the evidence and saying, gee, is it likely or not that this is going to happen? And if those two things are essentially the same, and I think they're an awful lot alike, you know, gee, I'm looking at this evidence, hmm, well-founded fear, yeah, you know what? She really, there's some basis here. That's well-founded likelihood. Yeah, you know, this is probably going to happen. And the IJ, we held the IJ can make that decision in the CAD context. Why is it not, and it's a clearly erroneous standard, why is it not the same for the well-founded fear here? Both questions, they clearly involve a legal conclusion. They are the same in the sense. No, we've said likelihood is not legal. We've said it's factual, totally factual. The only legal part is, does it amount to torture? And here we have, we got the legal part, does it amount to persecution? But that's basically been resolved. Why is this different? Why is well-founded fear any different from the determination as to the likelihood of torture? With respect to whether the facts give, whether the, with respect to the predicate facts and the fact-finding, that is subject to, that is a factual determination. I don't think that's a distinction. We've got them on both sides. We've got the facts that undermine. But we've said in Kaplan, we've said in Kaplan that it's not just whether these facts are there. It's what we make of them. What we make of them is factual. Here, what we make of them, is it well-founded? Why isn't that factual? It's the predicate facts underlying whether an individual has a well-founded fear is factual. The legal conclusion of whether those facts rise to the level of a well-founded fear of persecution is subject to denial for review. See, that's right. I don't get the two. I don't get the difference between the IJ being able to say, predictably likely, and the IJ being able to say, well-founded. I don't see how they're all that different. What's the basis for a different standard of review in Kaplan than here? I mean, that's really at the core of this. If you've drawn the distinction that you have, and as Judge Rendell has been pointing out, these are the facts. Here's the conclusion of law, torture in the one case, persecution in the other. And aren't we on the same page? And if we are on the same page, and Kaplan applies, then we have the same dynamic applied here. First, Kaplan specifically exempted and stated that it was not addressing whether the Board has denial for review in footnote 7 over a well-founded fear in the context of asylum. However, it provided helpful guidance and clarification on footnote 6. It specifically referenced the Attorney General's explanation of the Board review regulations. And the supplemental information attached to the regulations is something which provides additional deference in the asylum context that is not present in the CAT context. Specifically, the Board review regulations allow de novo review of judgments whether facts established by a particular alien amount to a legal standard. So the substantive area that we're in, asylum on the one hand, torture on the other, requires a different paradigm? It requires additional deference in the asylum context because the agency is interpreting its own regulation, which is entitled to heightened deference than when an agency interprets a statute. This is very clear in the Auer v. Robbins Supreme Court case where the court has held, and it's consistent, that the courts must accord deference to an agency's construction of its own regulations, where they are neither, quote, plainly erroneous nor inconsistent with the regulations. The interpretation of the regulations is entitled to that heightened deferential standard, which is directly implicated in the asylum context. In addition, the supplemental regulations state, under the asylum statute, the immigration judge's determination of what happened to an individual is a factual determination that will be reviewed by the Board under the clearly erroneous standard. However, quote, but the immigration judge's determination of whether these facts demonstrate harm that rises to the level of persecution are questions that will not be limited by the court. How does that differ from the paradigm that Judge Rendell mentioned a few moments ago, which is the analogy is torture to persecution, questions of law, well-founded with regard to persecution, question of fact. I'm not getting the distinction that you're trying to draw between Kaplan in here and the inapplicability of the Kaplan paradigm here. It's predicated on the fact that deference accorded to a regulation under asylum is different from the deference accorded to a statute under CAT. So when the reg says it's de novo, it has to be de novo, and we can't do anything about that. It limits the court's discretion. I see. Would you agree, though, that here, let's step back from this discussion, look at what happened here. The BIA took two pieces of evidence and really did de novo to them what it probably should have looked to see whether the IJ's crediting them was clearly erroneous. I mean, wasn't that – doesn't this have to go back because, really, we're talking about the underlying facts, and you can say maybe we don't even need to get to the bigger issue in order to decide this case, but they took a couple of little facts and discredited them in a way that they should have said were these clearly erroneous, and they should have said no, so we can't really disturb – we can't disturb those facts. We could, however, reweigh all the evidence and say, you know, based on everything, there's no well-founded fear under your construct. Would you agree? Yeah, I would agree. I mean, it's very clear on page two of the board's decision that, first, it discredits much of the evidence the immigration judge relied upon as anecdotal evidence, basically evidence submitted by family and friends, and then, in order to sustain a burden of proof objection, relies upon a 2007 State Department letter, which the immigration judge simply referenced but never considered or analyzed. That's part of the reason why we're asking the court to remand this case to the board for further consideration under Kaplan. And probably after this argument, you really would prefer that. Correct. A lot of unresolved issues. All right, thank you. Thank you. Thank you, Your Honor. I do agree with counsel that this case might be best to wait until Kaplan's decided. Obviously, if Kaplan gets overturned, then – You say – we have a petition. A rehearing petition item? Yeah, but nothing's been granted. I know, but if it does, then it does throw this whole analysis into question because now we can't rely on Kaplan. Well, that depends on how you look at Kaplan. I mean, if Kaplan stands for nothing more than the proposition that a adjudicative body needs to have the facts in hand before it starts applying legal standards, that's not really groundbreaking, is it? No, not at all. And that is, in essence, what Kaplan says, right? If you're going to weigh in there, you've got to know what the facts are, and then you've got a legal standard, torture, to apply to that. And the BIA is not free to reject the fact-finding that undergirds the application of the legal standard. Correct. And you were mentioning before ASB, and it's important to note, I think ASB is the application of the standard to facts that were not disputed. No one disputed the facts. Here, there's a big dispute about the facts. A big part of this case is what are the powers of the board to review facts and change their meaning? Because it does change the outcome of the case. If you don't believe any of the evidence, then you find you haven't met your burden. If the evidence stands as believable, credible, all 2,000 pages, then you have to believe that you've met your burden. Well, let me ask you this. If, and I certainly don't claim to know what the board is thinking here, but if what the board is saying and thinking is, it's the well-founded piece of well-founded fear, that objective piece of well-founded fear, that gives us a power to do some de novo review. Because, as Mr. Manekin was saying, there's institutional expertise that the IJ brings, and there's institutional expertise that the BIA brings. And the IJ can look at specific facts in a case, but we, the board, have lots of experience and look at all kinds of different cases across a bigger range, and we can assess whether what the IJ found as facts really amounts to what we consider to be objectively reasonable. If that's what they're driving at, is their analysis got any sound basis in the assertion that institutionally they're better set up to do it? If that's what they would do, possibly, but they're not doing that. They've never done that in any decision I get, and I've gotten hundreds. They don't do it. They review the facts again and again, over and over, to come to a different conclusion. When you comment just briefly on your colleague's view that this is different from CAT, that there's additional deference here that we would give to the, in the asylum context, because of their own regulations. Well, under Kaplan, I don't see it, because you're not really looking at the ultimate outcome. You're looking at how do we decide. A well-founded fear has a prediction of future, what's going to happen in the future. So Kaplan is looking. Someone's perception, even objective. Yes. The reasonable persons. It could be.